## COLUMBIA PRODUCE CO. *v.* STATE.

*(Nashville,* December Term, 1935.)

Opinion filed January 11, 1936.

EARL A. BROWN, of Dickson, and HUGH LEE WEBSTER, of Columbia, for plaintiff in error.

W. F. BARRY, JR., Assistant Attorney-General, for the State.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

Plaintiff in error, Columbia Produce Company, hereinafter referred to as defendant, was charged in a criminal warrant, issued by a justice of the peace, with violating section 5175.33 of the Code (Acts 1931, chap. 51, sec. 33) by buying and selling hides and furs without a license in Dickson county. The justice of the peace found defendant guilty and fined it $10. From this judgment, defendant appealed to the circuit court of Dickson county, where the case was tried on a written stipulation of facts, with the result that defendant was found guilty, and a fine of $10 and costs imposed upon it. From this judgment, defendant has appealed to this court and assigned errors.

It appears from the stipulation of facts, and from the judgment of the trial court, that defendant is engaged in the business of buying and selling raw hides and furs, with its main office and place of business in Columbia, Maury county, Tenn., with a branch office in Dickson, Dickson county, Tenn., where such business is carried on. That defendant procured a license according to the provisions of said Code section from the county court clerk of Maury county for the current year, but did not procure such a license from the county court clerk of Dickson county.

Code, section 5175.33, is as follows:

*"Green hides and raw furs for commercial purposes; license required, penalty.*—It shall be unlawful for any person, firm or corporation to purchase, receive for sale or have in possession for commercial purposes any green hides, raw furs or pelts of wild animals without first

procuring a license so to do from the county court clerk for which he or they shall pay the sum of twenty ($20.00) dollars, said license to remain in force until May 31st following date of purchase. Said money so collected to be placed to the credit of the division of game and fish. Any violation of the provisions of this section shall be a misdemeanor and punishable by a fine of not less than ten ($10.00) nor more than twenty-five ($25.00) dollars."

It is the contention of defendant that having procured the required license in the county of its principal place of business, it cannot, under the above section of the Code, or under the General Revenue Act, chapter 13, Acts 1931, Second Extraordinary Session, be required to obtain another such license in a county where it maintains a branch place of business, where raw hides, furs, and pelts are bought and sold.

Section 5175.33 of the Code is section 33, chapter 51, Public Acts of 1931. The caption of this act is as follows:

"An Act to create and establish for the State of Tennessee a Department of Game and Fish, and to provide means and agencies for its maintenance, and relating to the preservation, propagation and protection of all wild animals, wild birds, wild fowls and fish of the State of Tennessee, to establish and maintain game preserves and fish hatcheries; to provide penalties for the violation of any of the provisions of this Act and provide speedy trials before a Justice of the Peace of persons violating the laws relating to wild animals, wild birds, wild fowl and fish of this State, and to repeal all existing Acts relating to the protection, conservation and propagation of wild animals, wild birds, wild fowls and fish of this State."

This act was brought forward into the Code and appears therein as sections 5175.11-5175.53 inclusive, under the title "Department of Game and Fish." The act is a comprehensive one, and in construing any part thereof its general purpose must be kept in mind.

Under section 12 of the act (Code, sec. 5175.12) all moneys sent to the State Treasury in payment of licenses, fines, etc., arising from the fish and game law of the state, shall be set aside and constitute a fund known as the game and fish fund for the payment of the game and fish division's necessary and incidental expenses, as therein specified. The act is not a revenue measure, but is one designed for the protection of wild animals, bird life, and fishes. The requirement that a license be procured from the county court clerk to hunt or fish, or to receive for sale any green hides, raw furs, or pelts of wild animals is a part of the general scheme to protect wild life and fishes, and not to raise revenue for the state.

We think, considering the act as a whole, that but one license is required to authorize the holder to purchase, receive for sale, or have in possession for commercial purposes raw hides, raw furs, or pelts anywhere in the state. The provision in section 33 that these things, or any of them, may not be done "without first procuring a license so to do from the County Court Clerk" cannot be construed to mean that additional similar licenses must be procured from the county court clerk of every county in the state where such hides, furs, or pelts are purchased or received by the holder of the original license, at branch places of business, or otherwise. The act does not say "from the county court clerk of each

county," but only says "from the county court clerk." Under section 10 of the act, the state game warden "shall prepare and deliver to each County Court Clerk in the State" as many blank forms for licenses and tags as may be required. Under section 11 of the act, "all hunting and fishing licenses and tags are to be issued by the County Court Clerk." Such licenses, under section 15 of the act, are "for use in this State." The act permits a person to hunt or fish anywhere in the state on one license. In the absence of express language otherwise, it would be inconsistent to say that the Legislature intended that the purchaser of hides and pelts of the wild animals killed by the hunters, so licensed, is under the requirement of obtaining a license in every county where he purchases or receives for sale the hides or pelts of such animals.

Under section 10 of the act, on the fifteenth day of each month, the county court clerk shall return to the state game warden all used license stubs, and on the 1st day of June of each year shall return all unused licenses, with full settlement of his account. In this way the state game warden is kept advised as to who has obtained a license to hunt or fish, or to purchase hides and pelts, and is thus in a position to prevent unlicensed persons from engaging in such activities.

The trial judge seems to have concluded that defendant was under the necessity of obtaining an additional license in Dickson county by reason of the following provisions contained in the General Revenue Act, chap. 13, sec. 1, subsec. 13, Acts of 1931, Second Extraordinary Session:

"Every person conducting business from more than

one established place in a county shall be liable for the privilege tax on business done at each place.

"Should he conduct business from an established place in more than one county, he shall pay the privilege tax in each county.

"Should he maintain only one place of business in a county, but from that place extend his operations into adjoining counties (without establishing a regular branch office therein) he shall be liable for both State and County tax in County where the permanent place of business is located, but only for the County tax in any other county."

These provisions, however, are only applicable to the occupations and businesses declared to be privileges under the act. It is provided in section 1, subsection 16 of the act: "Any person doing any of the Acts herein declared to be a privilege, shall be deemed to be doing business within the meaning of this Act." Thus defendant cannot be required to take out a license in Dickson county for the purchase or reception for sale, for commercial purposes, of green hides or furs by reason of any provision of the General Revenue Act, and cannot be compelled so to do by reason of any provision of the game and fish act.

We think the act of 1931, chap. 51, the game and fish act, is a complete system in itself, and that the General Revenue Act of 1931 in no way annuls, modifies, or changes any of its provisions with respect to the licenses therein required, or otherwise. The two acts are not *in pari materia.*

The offense with which defendant stood specifically charged was entirely separate and distinct from any

offense under the General Revenue Act. It was error to convict defendant under the game and fish law under inapplicable provisions of the General Revenue Act.

The result is that the judgment of the trial court must be reversed and the suit dismissed.